**UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF PUERTO RICO**

WANDA RIVERA-GARCIA,

    Plaintiff,

       v.

SPRINT PCS CARIBE, ET AL.,

    Defendants.

CIVIL NO. 09-1813 (PG)

**OPINION AND ORDER**

Pending before the Court is defendant Sprint Nextel Corporation's motion to dismiss for lack of personal jurisdiction (Docket No. 59), plaintiff Wanda Rivera-Garcia's opposition thereto (Docket No. 67), and Defendant's reply (Docket No. 70). For the reasons set forth below, the Court **GRANTS** its request.

**I. BACKGROUND**

On August 17, 2009, plaintiff Wanda Rivera-Garcia ("Rivera" or "Plaintiff") filed the instant claim against defendants Sprint PCS Caribe ("Sprint Caribe"); Sprint Nextel Corporation ("SNC"); Patricia Eaves ("Eaves") and the Conjugal Partnership Pagan-Eaves; Juan O. Rodriguez ("Rodriguez") and Conjugal Partnership Rodriguez-Castillo; Evelyn Davila ("Davila") and Conjugal Partnership Velez-Davila. See *Complaint*, Docket No. 1. In her complaint, the Plaintiff seeks redress for the alleged sexual harassment, sex discrimination, retaliation, hostile work environment, unlawful employment termination, and other discriminatory practices she was subjected to during the course of her employment with Sprint Caribe. Id. Rivera alleges defendants' actions violated Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. § 2000e, *et seq.* ("Title VII"); Puerto Rico's sexual harassment statute, Law No. 17 of April 22, 1988 ("Law No. 17"), P.R. LAWS ANN. tit. 29, § 155a, *et seq.*; Puerto Rico's wrongful termination statute, Law No. 80 of May 30, 1976 ("Law No. 80"), P.R. LAWS ANN. tit. 29, § 185, *et seq.*; Puerto Rico's retaliation statute, Law No. 115 of December 20, 1991 ("Law No. 115"), P.R. LAWS ANN tit. 29, § 194, *et seq.*; Puerto Rico's anti-discrimination statute, Law No. 100 of June 30, 1959 ("Law No. 100"), P.R. LAWS ANN. tit. 29, § 146, *et seq.*; Puerto Rico's sex discrimination statute, Law No. 69 of July 6, 1985 ("Law No. 69"), P.R. LAWS

Civil No. 09-1813 (PG)                                                                    Page 2

ANN. tit. 29 § 1321, *et seq.*; and Puerto Rico's general tort statute, Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141 ("Article 1802").

In 2001, Sprint Caribe hired Plaintiff as an Assistant Manager and she was promoted shortly thereafter to Store Manager. It is uncontested that Rivera received salary increases several times, and that among other duties, the Plaintiff trained Sprint Caribe's sales personnel and managers. It is also admitted that Rivera and the stores she managed received several distinctions for sales performance. See Docket No. 6 at ¶ 3.4.

On or about January of 2004, co-defendant Rodriguez became Retail Sales Manager for Sprint Caribe, as well as Rivera's direct supervisor. According to Plaintiff, from the beginning, Rodriguez's attitude towards her was offensive, hostile and unprofessional. Rivera alleges that he began a pattern of sexual harassment consisting of sexual advances and innuendos. And although Rivera made it clear to Rodriguez that these were unwelcome and asked him to stop, his unlawful behavior escalated instead. See Docket No. 1 at ¶ 3.8. Rivera also alleges that she received a verbal warning about her management duties from Rodriguez for the first time since she began her employment at Sprint. See Docket No. 1 at ¶ 3.9.

According to Rivera, despite informing Davila, Sprint Caribe's Human Resources Manager, of the situation, her complaints were ignored. Plaintiff contends that Rodriguez berated her for calling Human Resources and ordered her to take two weeks of vacation time. Upon her return, she claims he transferred her to the Fajardo store, which is much farther away from Rivera's home, and at the time, did not have the necessary permits to operate until six months after opening. According to Rivera, the Fajardo store did not have running water or electricity, and at one point, the store was robbed at gunpoint on December 2004. Rivera claims that because she did not acquiesce to Rodriguez unwelcome conduct, he continued to reprimand her for the shortcomings in the Fajardo store and the employees' complaints, which Rivera contends were not her fault.

During her employment at Sprint Caribe, Rodriguez allegedly continued his unwelcome sexual advances and innuendos and made several offensive comments of sexual nature. When Rivera rebuffed Rodriguez, he continued to reprimand her for situations that she claims were out of her control and which Davila barred Rivera from refuting. According to Rivera, when she inquired the nature of the complaints against her in order to address them, Rodriguez and Davila

refused to provide any information. Rivera alleges that she eventually became afraid of placing another grievance against Rodriguez, because when she did, Davila failed to act upon Rivera's complaints and instead informed Rodriguez. This situation eventually led to Rodriguez retaliating against Rivera.

Rivera further alleges that her stress levels were so high that she developed several physical conditions that required staying at home to rest. Notwithstanding, she claims Rodriguez barred her from taking sick leave.

On or about July 2005, Rivera was transferred to the San Patricio store, and to the El Escorial store thereafter. However, on or about September 28, 2007, Rivera was transferred again to the Fajardo store. This transfer was allegedly once again in retaliation for not accepting Rodriguez's unwelcome sexual advances.

According to the allegations in the complaint, on September 29, 2007, Plaintiff called co-defendant Eaves to report the situation with Rodriguez. Rivera left a message for Eaves, who in turn, forwarded the message to Rodriguez for him to deal with the situation.

Thereafter, on December 4, 2007, Rivera called Davila and requested a meeting, which was set for the next day. However, once again, Davila allegedly informed Rodriguez of Rivera's call. After Davila cancelled their meeting, Rivera called Sprint's Ethic Line on December 5, 2007 and filed a formal grievance against Rodriguez for sexual harassment. Davila then set an appointment with Plaintiff and Eaves for December 7, 2007 wherein Rivera informed them of the situation. After the meeting, Rivera began reporting to a different supervisor, Ana Franco. However, over a month elapsed and Plaintiff allegedly did not receive any response to the grievance she had filed.

Rivera claims she was summoned to a meeting with Eaves on January 15, 2007 in which she was reprimanded because of certain employee complaints against her. However, Eaves allegedly refused to say which employees had purportedly complained against Rivera, or the nature of their alleged complaints. Rivera was then issued a final warning and warned that she would be fired if there was one more complaint against her.

On February 1, 2008, Plaintiff was assigned to the Catalinas Mall store in Caguas, Puerto Rico and continued to be supervised by Ana Franco. However, on February 20, 2008, Rivera received a call ordering her to report to Sprint Caribe's headquarters, where Eaves and Franco summarily fired Rivera.

According to Plaintiff, a timely charge of employment discrimination on the basis of sex discrimination, sexual harassment and retaliation was filed with Puerto Rico Department of Labor's Anti-Discrimination Unit ("ADU"), which notified of it to the Equal Employment Opportunity Commission ("EEOC") on June 5, 2008. See Docket No. 1 at ¶ 14. On May 25, 2009, Rivera received her Notice of Right to Sue from the EEOC, issued on May 20, 2009.

On August 17, 2009, Plaintiff filed the instant claim and on October 16, 2009, defendants Sprint Caribe, Davila, Eaves and Rodriguez answered the complaint (Docket No. 6). Shortly after, on October 30, 2009, defendants Conjugal Partnership Rodriguez-Castillo and Conjugal Partnership Doe-Davila filed a motion to dismiss (Docket No. 11) requesting that the claims against the conjugal partnership be dismissed. The Plaintiff opposed said motion, but also requested that the claims against co-defendants Efren Pagan and Conjugal Partnership Pagan-Eaves be voluntarily dismissed. See Docket No. 12. Then, on February 9, 2010, the defendants filed a motion for judgment on the pleadings (Docket No. 19) requesting that the claims pursuant to Article 1802 be dismissed against all defendants inasmuch as they are time-barred. In response, the Plaintiff filed a motion for partial voluntary dismissal requesting that her tort-based claims pursuant to Article 1802 be dismissed *without* prejudice. See Docket No. 22. The defendants replied opposing the dismissal without prejudice of these claims and reiterating their request for dismissal of the claims against the conjugal partnerships.[1] See Docket No. 24.

On February 9, 2011, co-defendant SNC filed the pending motion to dismiss for lack of personal jurisdiction. See Docket No. 59. SNC asserts in its motion that: (1) SNC does not have sufficient contacts with Puerto Rico as to justify the assertion of *in personam* jurisdiction by the Court; and (2) co-defendant SPCS Caribe, Inc. ("Sprint Caribe"), although ultimately owned by SNC, is a separate and independent corporate entity. Plaintiff opposes SNC's motion to dismiss (Docket No. 67) alleging that Sprint Caribe is a wholly

---

[1] Pursuant to this Court's Amended Opinion and Order entered on August 9, 2010 (Docket No. 36), Plaintiff's claims against Efren Pagan and the Conjugal Partnership Pagan-Eaves were dismissed with prejudice. The claims against Eaves, Davila and Rodriguez under Title VII and all claims under Puerto Rico Civil Code Article 1802 were also dismissed with prejudice. However, the claims against the conjugal partnerships Rodriguez-Castillo and Velez-Davila were dismissed without prejudice. Remaining before this Court are the claims under Title VII, Laws No. 17, 69, 80, 100 and 115 against Sprint Caribe and those under Laws No. 17, 69, 100 and 115 against Eaves, Davila and Rodriguez.

owned subsidiary of SNC, that SNC has control or oversees Sprint Caribe's employees, and that SNC was the employer of Plaintiff.

## II. STANDARD OF REVIEW

Under Rule 12(b)(2), a defendant may move to dismiss an action against it for lack of personal jurisdiction. See FED.R.CIV.P. 12(b)(2). The plaintiff bears the burden of proving that the Court has personal jurisdiction over the defendants. See Daynard v. Ness. Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir.2002) (citations omitted). A district court faced with such a motion "may choose among several methods for determining whether the plaintiff has met its burden: the "prima facie" standard, the "preponderance-of-the-evidence" standard, or the "likelihood" standard. … The "most conventional" and "most commonly used" of these methods is the "prima facie" standard." Fiske v. Sandvik Mining, 540 F.Supp.2d 250, 254 (D.Mass. 2008) (citing Daynard, 290 F.3d at 50-51 & n. 5; Foster-Miller, Inc. v. Babcock & Wilcox Can., 46 F.3d 138, 145 (1st Cir.1995); Boit v. Gar-Tec Prods., Inc., 967 F.2d 671, 675 (1st Cir.1992)).

Under the prima facie standard, the district court determines "whether the plaintiff has proffered evidence that, if credited, is enough to support findings of all facts essential to personal jurisdiction." Boit, 967 F.2d at 675. "In order to make a prima facie showing of jurisdiction, 'the plaintiff ordinarily cannot rest upon the pleadings but is obliged to adduce evidence of specific facts.'" Phillips v. Prairie Eye Center, 530 F.3d 22, 26 (1st Cir.2008) (quoting Foster-Miller, 46 F.3d at 145). The court then "add[s] to the mix facts put forward by defendants, to the extent they are uncontradicted." Daynard, 290 F.3d at 51 (internal citations omitted). The prima facie method is appropriate here because the jurisdictional inquiry does not involve materially conflicting versions of the relevant facts.

## III. DISCUSSION

"An exercise of jurisdiction must be authorized by state statute and must comply with the Constitution." Harlow v. Children's Hosp., 432 F.3d 50, 57 (1st Cir.2005) (quoting Noonan v. Winston Co., 135 F.3d 85, 89 (1st Cir.1998)). "Puerto Rico's long-arm statute allows Puerto Rico courts to exercise jurisdiction over a non-resident defendant if the action arises because that person: (1) transacted business in Puerto Rico personally or through an agent; or (2) participated in tortuous acts within Puerto Rico personally or through his agent." Negron-Torres v. Verizon Communications, Inc., 478 F.3d 19, 24 (1st Cir.2007) (citing P.R. LAWS ANN. tit. 32, App. III, R. 4.7(a)(1)) (quotation

marks omitted). The First Circuit Court of Appeals has noted "that the reach of Puerto Rico's long-arm statute stretches 'up to the point allowed by the Constitution.' … Therefore we proceed directly to the constitutional inquiry." Negron-Torres, 478 F.3d at 24 (citing Benítez-Allende v. Alcan Aluminio do Brasil, S.A., 857 F.2d 26, 29 (1st Cir.1988) (quoting Indus. Siderúrgica v. Thyssen Steel Caribbean, Inc., 114 P.R. Dec. 548, 558 (1983))).

"The due process clause imposes several requirements on the exercise of personal jurisdiction over out-of-state defendants." Harlow, 432 F.3d at 57. First of all, "[i]n order for [Puerto Rico] to exercise personal jurisdiction over … an out-of-state defendant, the Due Process Clause requires that [the defendant] have sufficient minimum contacts with the state, such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." Adams v. Adams, 601 F.3d 1, 5 (1st Cir.2010) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945)) (quotation marks omitted). "For specific jurisdiction, the plaintiff's claim must be related to the defendant's contacts. For general jurisdiction, in which the cause of action may be unrelated to the defendant's contacts, the defendant must have continuous and systematic contacts with the state." Harlow, 432 F.3d at 57. "The standard for evaluating whether … contacts satisfy the constitutional general jurisdiction test 'is considerably more stringent' than that applied to specific jurisdiction questions." Harlow, 432 F.3d at 64 (internal citations omitted); see also Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 54 (1st Cir.2002) (general jurisdiction requires that the defendant's activities in the forum be continuous and systematic, whereas specific jurisdiction requires a lesser showing).

"Second, for either type of jurisdiction, the defendant's contacts with the state must be purposeful. And third, the exercise of jurisdiction must be reasonable under the circumstances." Harlow, 432 F.3d at 57 (internal citations omitted).

**A. Specific Jurisdiction**

"For specific jurisdiction, the constitutional analysis is divided into three categories: relatedness, purposeful availment, and reasonableness." Phillips, 520 F.3d at 27.

> First, the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities. Second, the defendant's in-state contacts must represent a purposeful availment of the privilege of conducting activities in the forum state, thereby invoking the benefits and protections of that state's

>           laws and making the defendant's involuntary presence
>           before the state's courts foreseeable. Third, the
>           exercise of jurisdiction must, in light of the Gestalt
>           factors, be reasonable.

Id. at 27 (citing Adelson v. Hananel, 510 F.3d 43, 49 (1st Cir.2007)). "[A]n affirmative finding on each of the three elements of the test is required to support a finding of specific jurisdiction." Negron-Torres, 478 F.3d at 24.

"To satisfy the relatedness requirement, 'the claim underlying the litigation must directly arise out of, or relate to, the defendant's forum-state activities.'" N. Laminate Sales, 403 F.3d at 25 (citing United Elec., Radio & Mach. Workers of Am. v. 163 Pleasant St. Corp., 960 F.2d 1080, 1088-89 (1st Cir.1992)). "There must be more than just an attenuated connection between the contacts and the claim; the defendant's in-state conduct must form an important, or at least material, element of proof in the plaintiff's case." Phillips, 530 F.3d at 27 (citing Harlow, 432 F.3d at 61).

"A parent company may not be the subject to the jurisdiction of a court simply because its wholly-owned subsidiary resides in the forum state." Alvarado-Morales v. Digital Equipment Corp., 843 F.2d 613, 616 (1st Cir.1988)(citing Manqual v. General Battery Corporation, 710 F.2d 15, 20 (1st Cir.1983)). A plaintiff must demonstrate that the non-resident defendant parent company completed some act or transaction in the forum substantial enough to meet the due process requirements of "fair play and substantial justice" and, additionally, that the cause of action arises out of the act or transaction. Escude Cruz v. Ortho Pharmaceutical Corp., 619 F.2d 902, 904-5 (1st Cir. 1980)(citations omitted). "The First Circuit has established that the presumption of separateness must be overcome by "strong and robust" evidence that "the parent either controlled the subsidiary's business as a whole such that it can be said to have carried out business transactions in Puerto Rico, as provided in Rule 4.7(a)(1), or that it engaged in or controlled those activities which plaintiff alleges tortiously caused him injury." Alvarado-Morales, 843 F.2d at 616. A plaintiff who asks a court to disregard independent corporate structure by piercing a subsidiary's corporate veil faces a high burden of proof. See Velazquez v. P.D.I. Enterprises, Inc., 141 F.Supp.2d 189, 193 (D.P.R.1999).

Plaintiff alleges in her complaint that Sprint Caribe is a wholly owned subsidiary of SNC. See *Complaint*, Docket No. 1, ¶ 2.2. Plaintiff further alleges that SNC was her employer and responsible for the acts of its agents and supervisors, such as Rodriguez, Eaves and Davila. Id. at ¶¶ 2.6, 7.2.

In her opposition, Plaintiff alleges that: (1) Davila is an employee of SNC; (2) Sprint Caribe does not have its own Human Resources Department and the employees of that department are SNC employees; (3) Sprint Caribe does not have its own Employee Manual or Code of Ethics, but rather, these policies are imposed by SNC; and (4) there is a chain of command that reaches from Sprint Caribe to SNC. See Docket No. 67, ¶¶ 10, 11.

In support of its motion to dismiss, SNC filed an unsworn statement under penalty of perjury from Scott W. Andreasen ("Andreasen"), Assistant Secretary for SNC, which reflects that SNC has not done any business in Puerto Rico and would not be subject to a personal jurisdiction here. The declaration directly contradicts Plaintiff's conclusory allegations of SNC's control over Sprint Caribe's operations. Andreasen states that SNC is the direct or indirect parent corporation for approximately 260 other corporations, limited liability partnerships and other legal entities. Andreasen further states that all of SNC's operating subsidiaries are responsible for their own employees and decisions related to their employees and SNC is not involved in the day to day affairs of Sprint Caribe. Also, that Sprint Caribe is responsible for its own employees and decisions related to those employees.

Furthermore, Andreasen claims that: (1) there is no financial dependency between Sprint Caribe and SNC since they keep separate books and do not commingle assets; (2) SNC is a corporation organized and existing under the law of the State of Kansas; (3) SNC has never been licensed and qualified to do business in Puerto Rico; (4) SNC does not have any offices in Puerto Rico and is not subject to tax in Puerto Rico; (5) does not maintain corporate records in Puerto Rico; (6) SNC maintains no bank accounts in Puerto Rico; and (7) SNC does not have a designated agent in Puerto Rico.    Andreasen also states that certain of SNC's operating subsidiaries are authorized to operate their businesses using the d/b/a "Sprint Nextel," but that Sprint Caribe is not authorized to operate its business in Puerto Rico using the d/b/a "Sprint Nextel".

Even considering the facts in the light most favorable to Plaintiff, she has failed to meet the *prima facie* burden of demonstrating that jurisdiction attaches to SNC. Plaintiff, in the allegations of the complaint has not plead sufficient facts or evidence to meet the standard required when moving the court to pierce the corporate veil. Aside from conclusory allegations, none of the exhibits or allegations show that SNC controls Sprint Caribe operations or the mix in their properties or accounts. Plaintiff's assertion that co-defendant

Civil No. 09-1813 (PG)                                                    Page 9

Davila had testified that she was an employee of SNC, showing relatedness, was contradicted by a unsworn statement under penalty of perjury by Davila stating that after reviewing her records she is in fact an employee of Sprint Caribe. See Docket No. 59, Exhibit No. 2.

There is nothing before this Court that demonstrates a lack of corporate separateness, an absence of corporate records, or non functioning directors or officers. The allegations of the human resource department and the Employee Manual are not enough to create a causal connection between any business transaction or tortious conduct by SNC and Plaintiff's injuries. Furthermore, this also does not demonstrate that SNC has the necessary minimum contacts to assert specific personal jurisdiction over SNC. Plaintiff may not depend on the parent-subsidiary relationship *per se* to pierce a corporate veil. Ramirez De Arellano v. Colloides Naturels Int'l, 236 F.R.D. 83, 88 (D.P.R.2006).

Moreover, SNC has proffered evidence demonstrating that it does not control Sprint Caribe, nor is it responsible for Sprint Caribe's decisions regarding its employees. In addition, SNC and Sprint Caribe have separate board of directors and separate financial records. Plaintiff has failed to establish SNC's specific involvement in Sprint Caribe's personnel decision or with Plaintiff's dismissal from Sprint Caribe. Alvarado-Morales, 843 F.2d at 616.

**B. General Jursidiction**

According to the evidence submitted, SNC has its principal place of business in Kansas. It has no employees in Puerto Rico, never owned property here, never paid local taxes, or maintained any office or records in Puerto Rico. It has never been authorized to do business in Puerto Rico and never appointed an agent for service of process locally.

This Court finds that the limited contacts between SNC and Sprint Caribe do not reflect a continuous, systematic and substantial activity with this forum necessary for our long arm reach under general jurisdiction principles.

Accordingly, this Court concludes that Plaintiff has not sufficiently established that SNC had contacts with Puerto Rico or Sprint Caribe in a way to relate to her claims and meet the *prima facie* standard for personal jurisdiction.

### IV. CONCLUSION

For the reasons stated above, SNC's motion to dismiss for lack of personal jurisdiction (Dockets No. 59) is hereby **GRANTED**. Plaintiff's suit against SNC is hereby **DISMISSED WITH PREJUDICE.**

Civil No. 09-1813 (PG)                                                    Page 10

**IT IS SO ORDERED.**

In San Juan, Puerto Rico, August 2, 2011.

                                          S/ JUAN M. PEREZ-GIMENEZ
                                          JUAN M. PEREZ-GIMENEZ
                                          U.S. DISTRICT JUDGE